IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN LIVSEY, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | Criminal No. 18-143<br>Civil No. 24-84<br>Judge D. Michael Fisher |

**MEMORANDUM OPINION AND ORDER**

Presently pending before the Court is the Motion to Vacate, Set Aside, or Correct Sentence filed by Petitioner Kevin Livsey on May 29, 2023. ECF No. 104. The issues raised in the Motion and its associated briefing are ripe for resolution without the need for an evidentiary hearing.[1] For the reasons set forth below, the Motion is **DENIED**.

**I.     BACKGROUND**

  **A.     Factual History**

This case begins in 2016, when Petitioner was convicted in the Western District of Pennsylvania on two counts of possessing with the intent to distribute—and actually distributing—heroin, in violation of 21 U.S.C. § 841(a)(1). ECF No. 24 at 3. Petitioner was sentenced to twelve months and one day of imprisonment and three years of

---

[1] The Court will not hold an evidentiary hearing on a motion filed pursuant to 28 U.S.C. § 2255 if the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255. As detailed in this Memorandum Opinion and Order, the record resolves all facts relevant to Petitioner's Motion to Vacate and establishes that he is entitled to no relief.

supervised release. *United States v. Livsey*, No. 2:15-cr-00087-NBF-26, ECF No. 3012, at 3. But following his release, he sold more than 150 "stamp bags" of a controlled substance containing fentanyl and heroin to a confidential informant ("CI") in a controlled purchase at two addresses in the Beltzhoover neighborhood of Pittsburgh, Pennsylvania. ECF No. 98 at 31.

In May 2018, federal agents executed search warrants at Petitioner's apartment and at the Beltzhoover addresses. *Id.* at 31–32. Agents found thousands of dollars in cash in his apartment, as well as a document linking Petitioner with a phone number that he used to sell controlled substances. *Id.* at 32. At the Beltzhoover addresses, agents found three firearms and various quantities of fentanyl, carfentanil, and heroin.[2] *Id.* at 31–32.

### B. Procedural History

On June 5, 2018, Petitioner was charged in a three-count Indictment with (1) possession with the intent to distribute fentanyl, carfentanil, and heroin in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C), (2) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), and (3) possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). ECF No. 1.

On November 19, 2018, Petitioner pleaded guilty pursuant to a plea agreement in

---

[2] Two months later, the Government filed a Superseding Indictment charging Petitioner with possession with the intent to distribute fentanyl, carfentanil, and heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) on an earlier date. ECF No. 24 at 4. In November 2018, the Government filed an information pursuant to 21 U.S.C. § 851 to establish the existence of several prior convictions for state and federal controlled substance offenses. ECF No. 40.

which the Government agreed to dismiss his felon-in-possession charge.[3] ECF No. 42. In May 2019, the Court sentenced Petitioner to a term of 230 months' imprisonment, to be followed by six years of supervised release. *See* ECF No. 68.

Petitioner claims he asked his attorney to file a notice of appeal following his sentencing, but no appeal was docketed. *See* ECF Nos. 76, 77. On collateral attack, this Court found that counsel was ineffective in failing to file an appeal and permitted Petitioner to file a direct appeal. ECF No. 89. He did so. ECF No. 92. The Third Circuit concluded that his direct appeal "lack[ed] any basis in law or fact." ECF No. 102-2 at 5 (internal quotation marks omitted). Even so, it noted that its "decision to dismiss [Petitioner's direct] appeal is without prejudice to his right to raise [an ineffective assistance of counsel] claim on a collateral attack." *Id.* at 3–4 n.2. It is through that open door that Petitioner proceeds with this Motion.[4]

## II.   LEGAL STANDARDS

A federal prisoner may move a sentencing court to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Courts may afford relief under § 2255 on several grounds, including "that the sentence was imposed in violation of the Constitution or

---

[3] At his change-of-plea hearing, Petitioner admitted that he had read the plea agreement, that he understood it, and that he still wished to plead guilty to Counts I, II, and IV of the Superseding Indictment. ECF No. 98 at 31–34. He also admitted to committing the underlying criminal acts: that he had been storing the three pistols—together with the fentanyl, carfentanil, and heroin—at the Beltzhoover addresses, and that he intended to distribute the controlled substances. ECF No. 42 at 31–33.

[4] Specifically, Petitioner's claims related to his career offender enhancement and amendments to the United States Sentencing Guidelines' "status points" provisions do not relate to the ineffective assistance of counsel.

laws of the United States." 28 U.S.C. § 2255(a). The court accepts the truth of the defendant's allegations when reviewing a § 2255 motion unless those allegations are "clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005).

The Sixth Amendment guarantees the right of every criminal defendant to effective assistance of counsel. A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on such a claim, a defendant must show that (1) counsel's representation fell below an objective level of reasonableness based on prevailing professional norms, and (2) the deficient representation was prejudicial. *Id.* at 687–88. The defendant bears the burden of proving both prongs. *Id.* at 687. With these legal standards in mind, the Court turns to a consideration of Petitioner's Motion.

### III.   DISCUSSION

Petitioner contends that he has been "denied his right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution." ECF No. 104 at 3. He makes five arguments; none have merit.

#### A.   Failure to Move to Withdraw Guilty Plea

First, Petitioner claims his attorney failed to move to withdraw his guilty plea after he requested that counsel do so. *Id.* This argument fails, whether Petitioner actually requested to withdraw his guilty plea or not.[5] "There can be no Sixth Amendment

---

[5] This is the first time Petitioner has claimed that he asked his attorney to withdraw his guilty plea. He did not mention it: (1) at his change-of-plea hearing; (2) at his sentencing;

4

deprivation of effective counsel based on an attorney's failure to raise a meritless argument," *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999), and the same is true of an attorney's failure to move to withdraw a guilty plea if doing so would be meritless. *See Blair v. Gilmore*, 2022 WL 3586658, at *14 n.7 (W.D. Pa. Aug. 22, 2022).

Indeed, a defendant may withdraw his guilty plea after the Court has accepted it only if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The fair-and-just-reason inquiry focuses on a tripartite test set out in *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003):

*(1) Whether Petitioner Asserts His Innocence.* Here, Petitioner makes a vague gesture at a claim of innocence without any explanation or evidence contradicting his sworn testimony during his change-of-plea hearing, at which he unambiguously disclaimed his innocence. ECF No. 104 (referencing only "Petitioner's claim of innocence" with no further elaboration); ECF No. 98 at 31–33 (Petitioner agreeing with the factual truth of the Government's summary of criminal conduct). Petitioner's passing claim of innocence is exactly the sort of "[b]ald assertion[] of innocence" that is "insufficient to permit a defendant to withdraw his guilty plea." *Jones*, 336 F.3d at 252.

*(2) Strength of Petitioner's Reasons for Withdrawing His Plea.* Turning to the second *Jones* factor, Petitioner presents no strong justification for seeking to withdraw

---

(3) in his first § 2255 motion; or (3) in his direct appeal. He provides no explanation—let alone evidence—that explains why he waited years to bring this argument to the Court's attention, or otherwise establish that he ever raised his desire to withdraw his guilty plea with his attorney. The Court is thus skeptical that any such request was ever made.

his guilty plea. He does claim that he was prejudiced by the "late" filing of the Government's § 851 information, but this is baseless.[6] The same holds true for Petitioner's status as a career offender, which he presents as another justification for withdrawal.[7] Given these weak reasons for withdrawal, the Court need probe no further.

***(3) Whether the Government Would be Prejudiced by the Withdrawal.*** This question answers itself. As part of the plea, the Government agreed to dismiss one count in exchange for a guilty plea and waiver of certain appellate rights. Permitting withdrawal of Petitioner's plea would prejudice the Government in that it would require it to expend resources at trial, after having already expended time and effort reaching an agreement with Petitioner and conducting a change-of-plea hearing at which Petitioner admitted under oath to the criminal conduct with which he was charged.

As each *Jones* factors weighs against Petitioner, it follows that Petitioner's his first claims of ineffectiveness warrants no relief under *Strickland*'s first prong.

### B. Decision to Plead Guilty to Possession of a Firearm in Furtherance of a Drug Trafficking Crime

Second, Petitioner claims counsel was ineffective for advising him to plead guilty

---

[6] The statute does not contain a deadline—it simply requires that the Government file the information "before entry of a plea of guilty." 21 U.S.C. § 851(a)(1). The Government complied with that deadline here.

[7] As with the § 851 information, the plea agreement expressly provided that "[t]he parties further stipulate that U.S.S.G. § 4B1.1 should be applied to the calculation of [Petitioner's] guideline range because his prior convictions qualify him as a career offender under that section of the Guidelines." ECF No. 41-1 at 4. Petitioner was aware of his career offender status, and knowingly and voluntarily signed a plea agreement confirming as much.

to Count II of the Superseding Indictment—that is, his 18 U.S.C. § 924(c)(1)(A) charge for possession of a firearm in furtherance of a drug trafficking crime. ECF No. 104 at 4. This claim is meritless.

As the disjunctive text of 18 § U.S.C. § 924(c)(1)(A)(i) suggests, there are two ways of violating the statute: by "us[ing] or carr[ying] a firearm" *or* by "possess[ing] a firearm" "in furtherance of" a "drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). The Government acknowledges that it has not sought to prove that Petitioner actively used the firearms discovered at the Beltzhoover addresses in furtherance of a drug trafficking crime. ECF No. 106 at 17. But it had no difficulty in demonstrating that he possessed the firearms in furtherance of a drug trafficking offense, which is all it was required to do. True, the "mere presence" of a firearm is not enough to constitute a violation of § 924(c)(1)(A)(i). *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004). But, time and again, courts have found that the discovery of firearms close to drugs is enough to demonstrate that they were used "in furtherance of" a drug trafficking crime. *See, e.g., United States v. Garner*, 338 F.3d 78, 80–81 (1st Cir. 2003) (affirming conviction when firearms and drugs were found in a hole in the wall of a building's common basement and the defendant was selling drugs out of an apartment in the building). Here, each of the three firearms was found in the immediate proximity of wholesale and retail quantities of illegal drugs. Petitioner therefore cannot establish that his attorney's performance was objectively unreasonable under *Strickland*'s first prong when counsel advised him to plead guilty to Count II.

### C. Failure to Introduce Character Evidence at Sentencing

Third, Petitioner contends that his attorney was ineffective in failing to introduce a set of character letters provided by family members and friends at sentencing. ECF No. 104 at 4. To begin, the Court is doubtful that Petitioner provided these letters to his attorney before sentencing. Not one letter is actually dated in 2019, or at any other point before Petitioner's sentencing.[8]

As a result, the Court is left to liberally construe Plaintiff as arguing that he meant to have his family members and friends present similar mitigating evidence to the Court prior to his sentencing, and that his counsel was ineffective in soliciting their opinions. But counsel did not have to seek out letters of support from Petitioner's colleagues or family members. *See Burger v. Kemp*, 483 U.S. 776, 794 (1987) (holding that while habeas counsel could have conducted a more thorough investigation, "in considering claims of ineffective assistance of counsel, we address not what is prudent or appropriate, but only what is constitutionally compelled") (internal quotation marks and alterations omitted). Counsel's performance overcomes that threshold here.

### D. Career Offender Status

Fourth, Petitioner argues that "[a]t a minimum, this Court should grant re-sentencing in that Petitioner no longer qualifies as a career offender as neither of his two prior offenses . . . are predicate offenses under the career offender guidelines." ECF No.

---

[8] Three of the letters indicate they were drafted at the end of April 2020—well after Petitioner's May 2019 sentencing. *See* ECF No. 104 at 9, 11–12. Others contextually suggest that they were written well after sentencing. *Id.* at 13 (referencing the COVID-19 pandemic).

104 at 4. Whether true or not, "an incorrect career-offender enhancement under the advisory guidelines is not cognizable under § 2255." *United States v. Folk*, 954 F.3d 597, 604 (3d Cir. 2020). That is because "[e]ven when based on an incorrect advisory career-offender enhancement, a sentence within the statutory maximum is lawful." *Id.* "And a lawful sentence is not a complete miscarriage of justice." *Id.* Petitioner's challenge to his career offender status is thus foreclosed.

### E. "Status Point" Amendment[9]

Fifth and finally, Petitioner points to Amendment 821 to the 2023 version of the United States Sentencing Guidelines as grounds for relief.[10] ECF No. 115 at 5. Amendment 821 is retroactive and "the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2)." U.S.S.G. § 1B1.10. But Petitioner has not filed a motion for a reduced sentence under § 3582(c)(2). The Court is cognizant of the Third Circuit's oft-repeated "preference that cases be disposed of on the merits whenever practicable." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 2004). Even so, a motion under § 3582(c)(2) cannot be bootstrapped to a § 2255 motion, and so Petitioner's argument fails.

---

[9] Petitioner raised this issue for the first time in his reply in support of his § 2255 motion. Normally, arguments not raised in a party's opening brief are forfeited. *Waldor v. Saul*, 2020 WL 2557340, at *2 (W.D. Pa. May 20, 2020). That said, Amendment 821 did not become operative until November 1, 2023—more than five months after the filing of his initial Motion. Because Amendment 821 is made retroactive by section 1B1.10 of the Guidelines, the Court does not consider Petitioner's argument forfeited.

[10] Amendment 821 reduced the so-called "status points" enhancement for offenses committed while on supervised release from two points to one point. *See* U.S.S.G. § 4A1.1(e) (effective Nov. 1, 2023).

9

## IV. CONCLUSION

AND NOW, this 6th day of February, 2024, in accordance with the foregoing Memorandum Opinion,

IT IS HEREBY ORDERED that Petitioner's Motion to Vacate, Set Aside or Correct Sentence, ECF No. 104, is **DENIED**;

IT IS FURTHER ORDERED that no certificate of appealability shall issue;[11] and,

FINALLY, an appropriate Judgment follows at Civ. No. 24-84.

IT IS SO ORDERED.

BY THE COURT:

s/ D. Michael Fisher
United States Circuit Judge

Date:   February 6, 2024

cc/ecf: All counsel of record

    Kevin Livsey
    USMS 35691-068
    Elkton Federal Correctional Institution
    Inmate Mail/Parcels
    PO Box 10
    Lisbon, OH 44432

---

[11] The Court will issue a certificate of appealability only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, the record fails to show a violation of Petitioner's constitutional rights and jurists of reason would not find that conclusion debatable.